UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

DANNY ATTENBOROUGH, CECIL D. BELL,
JAMES BYNUM, KENNETH CAPERS,               03 Civ. 4399 (KMW)(THK)
BEVERLY COLON, CHRISTOPHER COLON,
GEORGE FIGUEROA, THOMAS FLOWERS,
RANDALL FORD, NERISSA HAIRSTON,
MICHAEL HARRISON, LEON HENRY, FRANK
INGRAM, JIHAD JABBAR, KENNETH
LEWIS, WILLIE LEWIS, MICHELLE
MITCHELL, WILLIAM RICHARDSON,
STEVEN SHARP, FRANK WEMBERLY,
SHARON WESTON and HAROLD WRIGHT,

                        Plaintiffs,       **SECOND AMENDED
                                          COMPLAINT**

        -against-

CONSTRUCTION AND GENERAL BUILDING
LABORERS' LOCAL 79,

                        Defendant.

-----------------------------------x

        Plaintiffs, by their attorney, Nathaniel B. Smith,
hereby allege as and for their second amended complaint as
follows:

## NATURE OF ACTION

        1.   This is an action on behalf of all similarly
situated minority members of a local trade union whose
controlling, non-minority members have engaged in and continue to
engage in an established pattern, practice and policy of
referring work opportunities to its members based upon nepotism
and cronyism.  The nepotistic and cronyistic system has a

1

disparate impact on minority members of the union and is unlawful under federal, state and local laws.  Plaintiffs seek declaratory and injunctive relief as well as damages.

### THE PARTIES

2.   Plaintiff, Danny Attenborough, is a black man who at all relevant times is and has been a member of Construction and General Building Laborer's Local 79 ("Local 79"). Attenborough joined Local 79 in 2000, and had a shop steward certificate issued by Local 79 for 2 years from November 2001 till November 2003 and has worked over 4,000 hours as a union member.  Attenborough never received a shop steward assignment from the union and received only one job referral from Local 79, which resulted in a total of 31 hours of paid labor.  When Attenborough was not working he maintained his name on the Out-Of-Work List, which is the purported method by which work is referred by the union's hiring hall.   In 2002 and 2003 Attenborough worked a total of 1919 and 1869 hours, respectively.

3.   Plaintiff, Cecil D. Bell, is a black man who at all relevant times is and has been a member of Local 79.  Bell joined a predecessor to Local 79 in 1987, and has accumulated over 4,000 hours as a union member.  An at all relevant times, he has had his shop steward certificate since 1997, and since 2002 has not been sent out for a steward position by the union.  In addition, Bell has been referred to work off the Out-Of-Work List

2

but most of the jobs he has received from the Out-Of-Work list were short-term or otherwise unattractive work assignments.   In 2002 and 2003 Bell worked a total of 1811 and 213 hours, respectively.

    4.    Plaintiff, James Bynum, is a black man who at all relevant times is and has been a member of Local 79.  Bynum joined a predecessor to Local 79 in 1989, has over 4,000 hours worked as a union member, and in 1997 received his shop steward certificate.  From 1996 through 2000 Bynum worked for Local 79 in several capacities as Business Agent, as an Assistant to the Hiring Hall Director, and as the Director of the Grievance Department.  From 2000 till 2003 Bynum worked for various contractors as a Local 79 shop steward.  In 2003 Bynum became a candidate for election to a union office against the incumbent officers of Local 79, and as a result Local 79 has retaliated and discriminated against him by refusing to refer him out as a shop steward and by referring him out to short-term or otherwise unattractive work through the hiring hall.   In 2002 and 2003 Bynum worked a total of 2654 and 846 hours, respectively.

    5.    Plaintiff, Kenneth Capers, is a black man who at all relevant times is and has been a member of Local 79 since 2001 and has a total of 1,099 hours worked with the union.  At all relevant times Capers placed his name on the Out-Of-Work List and in the past 4 years has been referred by the hiring hall to

only two one-day and dangerous demolition jobs for a total of 15.5 hours.  In 2002 Capers worked a total of 23 hours.

6.   Plaintiff, Beverly Colon, is a black woman who at all relevant times was a member of Local 79.  Colon joined Local 79 in 2000, and in 2001 obtained a shop steward certificate. Colon maintained her name on the Out-Of-Work List, only received short-term or otherwise unattractive referrals from the union and she has never received a referral to be a shop steward. In March of 2003 Colon was forced to leave Local 79 due to a lack of work and joined another labor union in New York City.  In 2002 Colon worked a total of 1177 hours

7.   Plaintiff, Christopher Colon, is a Hispanic man who at all relevant times is and has been a member of Local 79 since 1995.  In 2002 he worked a total of 710 hours.

8.   Plaintiff, George Figueroa, is a Hispanic man who at all relevant times is and has been a member of Local 79 since 2001 and has accumulated over 1,000 hours work.  In 2001 Figueroa received his shop steward certificate but has never been sent out for a steward position and has never received a referral from the union for any other position.  Figueroa has been out of work for sustained periods of time for the past three years.

9.   Plaintiff, Thomas Flowers, is an individual who at all relevant times is and has been a member of Local 79 and its predecessors since 1992.  Flowers has accumulated over 4,000

4

hours work with the union and obtained his shop steward certificate on July 2000. Since receiving a short-term assignment in July 2001, Flowers has not received a shop steward assignment. In addition, at all relevant times Flowers maintained his name on the Out-Of-Work List and has only received short-term or otherwise unattractive work referrals from the union. In 2002 and 2003 Flowers worked a total of 1287 and 613 hours, respectively.

        10. Plaintiff, Randall Ford, is a black man who at all relevant times is and has been a member of Local 79 since 2001 and has accumulated over 3,000 hours with the union. At all relevant times Ford maintained his name on the Out-Of-Work List and he has never received a referral for a job from the union. In 2002 and 2003 Ford worked a total of 851 and 808 hours, respectively.

        11. Plaintiff, Nerissa Hairston, is a black woman who at all relevant times is and has been a member of Local 79. Hairston joined Local 79 in 2000 and has accumulated over 2,000 hours work as a union member. Hairston maintained her name on the out of work list and in 2001 obtained her shop steward certificate. For all of 2003 she did not receive any referrals for work from the union, has never been referred for work as a shop steward, and the only referrals for work that she received from the union were for short-term and unattractive jobs. In

5

2002 and 2003 she worked a total of 298 hours.

12.   Plaintiff, Michael Harrison, is a black man who at all relevant times is and has been a member of Local 79 and its predecessors since 1984, and has accumulated over 4,000 hours of work.  From 1997 through 2003 Harrison had his shop steward certificate and at all relevant times maintained his name on the Out-Of-Work List.  Since 1999 Harrison has not been sent out as a shop steward and all of the referrals that he has received from the union have been short-term or otherwise unattractive jobs. In 2002 and 2003 Harrison worked a total of 107 and 1356 hours, respectively.

13.   Plaintiff, Leon Henry, is a black man who at all relevant times is and has been a member of Local 79 since 1999 and has accumulated over 4,000 hours work.  At all relevant times he maintained his name on the Out-Of-Work List and has had  his shop steward certificate since 2000 but has only received short-term or otherwise unattractive referrals from the union.  In 2002 and 2003 Henry worked a total of 1166 and 591 hours, respectively.

14.   Plaintiff, Frank Ingram, is a black man who at all relevant times is and has been a member of Local 79 since 1999 and has accumulated over 4,000 hours work with the union.  At all relevant times, Ingram maintained his name on the Out-Of-Work List and for a two-year period held a shop steward certificate.

6

Ingram has only received referral for short-term work assignments from the union and received only one assignment as a shop steward after he threatened legal action against the union for discriminatory practices.   In 2002 and 2003 Ingram worked a total of 999 and 298 hours, respectively.

15.   Plaintiff, Jihad Jabbar, is a black man who at all relevant times is and has been a member of Local 79 since 1999. At all relevant times Jabbar maintained his name on the Out-Of-Work List and has only received short-term or otherwise unattractive work referrals from the union.   In 2002 Jabbar worked a total of 1830 hours.

16.   Plaintiff, Kenneth Lewis, is a black man who at all relevant times is and has been a member of Local 79 since 2001.   At all relevant times Lewis maintained his name on the Out-Of-Work List and has only received short-term or otherwise unattractive work referrals from the union.   In 2002 Lewis worked a total of 1299 hours.

17.   Plaintiff, Willie Lewis, is a black man who at all relevant times is and has been a member of Local 79 since 1998. At all relevant times Lewis maintained his name on the Out-Of-Work List and has only received short-term or otherwise unattractive work referrals from the union. In 2002 Lewis worked a total of 236 hours

18.   Plaintiff, Michelle Mitchell, is a black woman who

7

at all relevant times is and has been a member of Local 79 since 1998.  At all relevant times Mitchell maintained her name on the Out-Of-Work List and has only received short-term or otherwise unattractive work referrals from the union.  In addition, for one year from July 1999 through July 2000 Mitchell held her shop steward certificate and worked as a shop steward for the union. In 2002 and 2003 Mitchell worked a total of 35 and 50 hours, respectively.

19.  Plaintiff, Steven Sharp, is a black man who at all relevant times was a member of Local 79 until 2003 when he was forced to cease paying his dues due to a lack of work.  At all relevant times Sharp maintained his name on the Out-Of-Work List and has only received short-term or otherwise unattractive work referrals from the union.  In 2002 Sharp worked a total of approximately three weeks work.

20.  Plaintiff, Frank Wemberly, is a black man who at all relevant times is and has been a member of Local 79 and its predecessors since 1989.  Wemberly has accumulated over 4,000 hours work with the union and at all relevant times maintained his name on the Out-Of-Work List and has only received short-term or otherwise unattractive work referrals from the union.  In addition, from October 2001 through October 2002 he held a shop steward certificate and never received a referral for a position as a shop steward.  In 2002 and 2003 Wemberly worked

8

approximately 1500 and 750 hours, respectively.

21.  Plaintiff, Sharon Weston, is a black woman who at all relevant times is and has been a member of Local 79 since 2001.  At all relevant times Weston maintained her name on the Out-Of-Work List and has only received short-term or otherwise unattractive work referrals from the union.  In addition, Weston obtained her shop steward certificate from the union but has never received an assignment as a steward from the union.

22.  Plaintiff, Harold Wright, is an individual who at all relevant times is and has been a member of Local 79 since 1999.  Wright has accumulated over 4,000 hours work with the union and had a shop steward certificate from 1999 through 2002. In 2002 Wright worked a total of 629 hours and for a substantial part of 2003 was unemployed.

23.  Defendant, Construction and General Laborers' Local 79, is a local trade union of construction and general laborers in the New York metropolitan area.

### JURISDICTION AND VENUE

24.  This action arises under 42 U.S.C. §§1981 & 2000e and under the doctrines of pendant and ancillary jurisdiction.

25. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 & 1337.

26.  Venue is proper in this district pursuant to 28

9

U.S.C. §1391(b).

**CLASS ALLEGATIONS**

27.   Plaintiffs sue on their own behalf and as
representatives of a proposed class of Local 79 members who are
discriminated against by means of Local 79's discriminatory
referral practices.

28.   Plaintiffs seek declaratory and injunctive relief
on behalf of themselves and all others similarly situated, more
particularly defined as:

All minority members of Local 79 who at any time
relevant to this action were or are listed on the Local 79 Out-
of-Work List, or who have informed Local 79 of the fact that they
were out of work and requested to be placed on the Out-of-Work
List, and all minority members of Local 79 who at any time
relevant to this action had a shop steward certification from
Local 79 or were eligible to obtain a shop steward certification
from Local 79.

29.   This action is properly maintainable as a class
action under Fed. R. Civ. Pro. 23(a) because: (1)  the class is
so numerous that joinder is impracticable; (2) there are common
questions of law and fact; (3) the claims of the named plaintiffs
are typical of the claims of the class; and (4) the named
plaintiffs will fairly and adequately protect the interests of
the class.

30.   This action is properly maintainable as a class
action under Fed. Rule Civ. Pro. 23(b)(2) on the ground that

10

Local 79 has acted and refused to act on grounds generally applicable to the class as a whole, making declaratory, injunctive and other equitable relief appropriate for the class as a whole.

**BACKGROUND**

31.   Local 79 is a trade union of general laborers in the New York City metropolitan area.

32.   It has approximately 7,500 active members who work primarily in the construction and demolition business in the City of New York.

33.   Local 79 is a member union of the Mason Tenders District Council of Greater New York (the "District Council"), the umbrella organization for six affiliated local unions, including Local 79, Local 66 (general building laborers), Local 78 (asbestos, lead and hazardous waste laborers), Local 108 (waste materials, recycling and general industrial laborers), Local 279 (association of professional and specialty workers), and Local 1261 (lay faculty association).

34.   The District Council and Local 79 are governed by the Laborers' International Union of North America ("LIUNA"), the overall governing body for all local unions of general laborers in the country.

11

35.   Historically, Local 79 and its predecessors have been controlled by white, non-minorities; there is a history and practice of discriminating against minorities.

36.   Since the passage of the Civil Rights Act of 1964 and the passage of similar civil rights laws by the State of New York and the City of New York, minorities have had greater success gaining entrance and membership in trade unions such as Local 79.

37.   However, there remains to this day dramatic differences between the quality and duration of the job opportunities that Local 79 refers to non-minorities and the quality and duration of job opportunities that Local 79 refers to minorities.

38.   These differences in employment opportunities arise because the union officials who are in control of the Local 79's job referral system bypass objective hiring hall rules for referring out work and make decisions based on a system of cronyism and nepotism that has a disparate impact on minority members of Local 79.

39.   This system of nepotistic and cronyistic referral practice is a source of, and a manifestation of, an inherently corrupt system of union management that is endemic in the union construction industry.

12

40.   In 1995, LIUNA agreed with the United States Attorney General to enter into a Consent Decree entitled, <u>United States</u> vs. <u>Laborers' International Union of North America, AFC-CIO</u>, United States District Court for the Northern District of Illinois.

41.   The Consent Decree provided that an organized crime syndicate known as La Cosa Nostra has at various times had a corrupting influence on the affairs of various locals and other entities within LIUNA.

42.   The Consent Decree provided that the affairs of LIUNA and its locals be maintained and conducted in a democratic fashion, with integrity, for the sole benefit of its members and without unlawful outside influence.

43.   The Consent Decree provided that in order to achieve fairness in the distribution of work and to prevent the manipulation of the Hiring Hall process, LIUNA agreed to adopt specific Job Referral Rules to be followed by all locals and to be supervised by the General Executive Board Attorney and an Independent Monitor.

44.   Without a fair and objective set of rules and procedures for the referral of work, individuals in control of the union's referral systems could exchange favors or other

consideration for work and/or have their referral based on a system of nepotism and cronyism.

45.  As a result of the agreement to the Consent Decree, all of the general laborer's local unions in the New York City area were consolidated into a single local union that thereafter became known as Local 79.  Previously, each of the locals of general laborers in New York City operated within certain specific geographic areas, such as lower Manhattan.  As a result of the consolidation, Local 79 became the central union hall for all general laborers in the New York City area.

46.  In 1996, following Local 79's consolidation, union officials began to implement a system for referring out work.

47.  At its inception, the job referral rules were simple: whenever a member contacted Local 79 stating that he or she was looking for work, that member's name was recorded on a list and, as referral opportunities arose, members were contacted and sent out based solely on a first-come, first-served basis.

48.  The initial referral system did not distinguish between referrals for positions of "shop steward" or general laborer.

49.  Under bargaining agreements with union construction companies in the New York City area, all laborers must be (or shortly become) members of Local 79.  In addition, on

14

each new job, Local 79 has the right to send out to the job one general laborer who will be designated as the union's shop steward.

50.   Under the standard bargaining agreement, a contractor has the right to select 50% of the general laborers for a job and Local 79 has the right to select 50% of the general laborers.  In addition, the shop steward is always the first or second laborer on the job, and the last or second to last laid off as a project slows down.  The shop steward also has, by virtue of the position, the first right to overtime for the job.

51.   The shop steward's principal function is to be the eyes and ears of the union, and thereby report to the Business Agent for that job's geographic area any information relevant to the protection of the union member's rights while on the job.

52.   Local 79 has 20 to 25 Business Agents, and the majority of them are responsible for covering specified geographic areas within the City of New York.  Generally, the Business Agents report to the Business Manager or the Assistant Business Manager.

53.   In order to maintain the appearance of fairness, Local 79 maintains an "Out-of-Work" List, which is posted on a weekly basis on a bulletin board at the Hiring Hall.

15

54.   The Out-of-Work List provides the following information for each member: name, member number, total hours, certificates, date placed on the list and rank or number on the list.  Annexed hereto as Exhibit 1 is an example of the Out-of-Work List for February 26, 2002.

55.   The Out-of-Work List also provides information about each member's skills and job preferences.

56.   In the Certificates section, the List specifies whether the member has certificates signifying qualification for the following types of work: (1) shop steward; (2) "burn" or the use of fire and heat as a tool; (3) fire watch or fire safety; (4) confined space; (5) hazards; (6) scaffolding; and (7) CPR/First Aid.

57.   The Out-of-Work List also identifies each member's job preferences: (1) general contractor work; (2) mason tender work; (3) mixing; (4) scaffolding; (5) demolition; and (6) punch list.

58.   The most attractive type of job is that of shop steward for a general contractor.

59.   General contracting work tends to be the least physically demanding type of work for Local 79 laborers.  The other significant types of work, mason tender, scaffolding, and demolition, are physically demanding and dangerous.

16

60.  Mason tender and mixing work is back-breaking labor because the worker is required to move heavy bricks and cinder blocks and to move and mix heavy bags of cement that can weigh as much as 100 pounds.

61.  Scaffolding work, which consists of putting up and taking down scaffolds for buildings, is inherently dangerous due to risk of falling.

62.  Demolition work is very physically demanding and is dangerous work, due to the risk of collapsing walls or floors and the risk of electrocution or other hidden or latent dangers.

63.  Receiving a shop steward assignment is also attractive because the shop steward has the most job security, is the first hired and the last fired, has the first option on overtime, tends to accumulate more overtime pay, is generally required to do less demanding physical work, and often does not have to be on the job site in order to be paid.

64.  As a result of the cronyistic and nepotistic practices of the Local 79, numerous individuals, who are friends or relatives of union officials, are treated more favorably than the rest of the union membership simply because of their relationships.

65.  Upon information and belief, those individuals regularly earn, as a result of the nepotistic and cronyistic

17

referral system, between $125,000 and $150,000 per year, are rarely forced to become unemployed (but may do so at their option as a kind of vacation paid for by unemployment insurance), and tend to receive job assignments to long-term jobs (often longer than 12 months) that require far less physical labor than the types of assignments that the disfavored members tend to receive. By contrast, a significant percentage of the disfavored members, including the named plaintiffs, struggle to earn $20,000 - $30,000 per year.

    66.  Upon information and belief, the typical member in the class of favored members is paid for about 2,300 to 2,600 hours per year, whereas the typical member in the disfavored class and the named plaintiffs must struggle to accumulate more then 1,000 hours per year.

    67.  Upon information and belief, the following is a partial list of individuals who are the beneficiaries of the Local 79's nepotistic and cronyistic referral system:

        Mike Brennan
        Francesco Bosdrello
        Steve Cipriano
        Ralph Conca
        Nicholas Chiarello
        Joseph Colombo
        John Dufford
        Joseph Franco
        Joseph Giardino, Jr.
        Frank Hofmeister
        George Krauss

```
            Anthony Marino
            Joe Mastrione
            Michael Mongelluzzo
            Fortunato Multari
            Carl Neiman, Sr.
            John Nostro
            James O'Connell
            George  Potts
            James Raggoboto
            Carmine Rizzo
            John Scafiti
            Joe Scalice
            Anthony Sedia
            Robert Sparano
            Michael Sweets
            Nicholas Tarul
            John Tymus
            Kevin Vaughn
            Billy Ziggy
```

68.   The nepotistic and cronyistic referral system operates behind the scenes and in direct contradiction to the job referral rules that were established in 1995.

69.   As a result of the behind-the-scene operations of the referral system, it is difficult for disfavored members to become aware of the unfair treatment they are receiving.

70.   There are numerous means whereby a disfavored member can be denied the fair treatment that the job referral rules are designed to protect.

71.   For example, a union official at the Hiring Hall can simply ignore the member's ranking on the list and send out a favored member.

19

72.   Alternatively, a union official can also find out from a contractor that a job position will become available, send a favored member to the job and simply not report the referral opportunity to the Hiring Hall.

73.   Plaintiffs are not in control of the operation of the Hiring Hall and union officials conceal from the membership the facts that show when or how they bypass the Hiring Hall rules.

74.   The paragraphs set forth below provide some examples of how Local 79's nepotistic and cronyistic referral system operates to the advantage of the favored members and to the disadvantage of the disfavored members.

75.   In about 2000, Plaintiff Harrison complained to the Business Manager about not getting sufficient work and about the fact that union cronies were getting good jobs as shop stewards.  Harrison specifically complained that Joe Mastrione, the brother of the Business Agent, John Mastrione, was receiving special treatment from the union because of his relationship with his brother.  The Business Manager denied the fact of special treatment and told Harrison that there was one Out-of-Work list and no special, side, or secret list for shop stewards.  To quiet Harrison's complaints, the union sent Harrison to a shop steward job for the VRH Construction at JFK Airport.

20

76.   Harrison reported to work at the job but was the only laborer on the job sent from the union.  However, within several months the scope of the project changed and increased significantly and as a result Harrison was in position to be shop steward on a long-term assignment for a general contractor employing over 10-15 laborers.  Before the scope of the work changed, however, the Business Manager and the Business Agent removed Harrison from the shop steward position and filled the position with one of their cronies, Nick, whose last name is unknown and was the brother of a former Executive Board member of one of the predecessor locals that was consolidated into Local 79 in 1996.  The JFK project is still going on today and as a result the shop steward who replaced Harrison has earned over $100,000 a year for the past four years and will continue to do so for the next several years.  Harrison and the other plaintiffs had their shop steward certificates or could have easily obtained one in order to receive that position.

77.   In the Fall of 2001, Plaintiff Beverly Colon received a telephone call from Denise Echevarria, the Assistant to the Director of the Hiring Hall, and Echevarria told Colon that she was going to refer her as the first person on the Hiring Hall list to a "good, long-term" job.  In the background, however, Colon could hear the Director of the Hiring Hall,

William Schmidt, interrupting the conversation and telling
Echevarria, "Wait, tell her we will have to call her back."
Later that day, Colon was told that the long-term job was given
to someone else and Colon was referred to a job that lasted about
two weeks and thereafter became unemployed, and lost income and
benefits.

78.   In about December 2000, Plaintiff Hairston
received a referral to work for Gazetteer Contracting at Columbia
University, and while on the job a new member without any
significant experience, Billy Ziggy, came on the job as a
referral from Local 79.  During the course of the job, Hairston
was laid off due to a slow-down.  Due to Ziggy's contacts with
the union he remained on the job even though Hairston was more
qualified.  As a result Hairston became unemployed and lost
income and benefits.

79.   In 2001, Plaintiff Ingram complained about
nepotism in the Hiring Hall and through a worker's organization
threatened a lawsuit against Local 79.  As a result the Business
Manager told Ingram to take the shop steward class over the
weekend and get a shop steward certification, which Ingram did.
On the following Monday, Ingram was sent to work as a shop
steward even though he lacked any experience for the position and
was given no direction or training for the position other than

22

the class he had taken over the weekend.  The position lasted
about four months and Ingram never again received a shop steward
assignment.

80.  In February 2002, Harrison was out of work for
three months and was number 14 on the Out-of-Work list for
February 26, 2002 (Exhibit 1, page 1).  At the same time,
Mitchell was out of work for three months and was number 41 on
the list.  Flowers was out of work for nine weeks and was 145 on
the list.  Colon was out of work one month and was number 271 on
the list.  Ingram was out of work three weeks and was number 803
on the list.  Hairston was out of work four months and was number
868 on the list.  Attenborough was out of work three weeks and
was number 1,071 on the list, although based on his total hours
he should have been above Franco on the list as another "A" man.

81.  Upon information and belief, numerous other
members of the class of plaintiffs in this action were also on
the Out-of-Work lists annexed hereto as Exhibits 1-4.

82.  On February 21, 2002, five days before the
printing of the February 26, 2002 Out-of-Work list, one of the
favored members, Joseph Franco, placed his name of the Out-of-
Work list.

83.  Upon information and belief, many of the favored
members do not even bother to place their names on the Out-of-

23

Work list and simply bypass the Hiring Hall procedures all together.

84.   Upon information and belief, Franco bypassed Harrison, Mitchell, Flowers, Colon, Ingram, Hairston and Attenborough on the list and was sent by Local 79 to a long-term general contractor's job for Turner Construction at 42nd Street and Broadway.

85.   Upon information and belief, Franco was sent to the Turner job as a shop steward.

86.   At that time, Harrison, Flowers, Hairston, Attenborough and Ingram also had shop steward certificates.

87.   At that time, Mitchell and Colon had had their shop steward certificates but had let them lapse because they were not getting any steward assignments and had no prospect for such assignments in the foreseeable future.

88.   The vast majority of the members of Local 79 were qualified to receive the steward assignment given to Franco and those who did not have a shop steward certificate could easily have obtained one in a few days.

89.   Upon information and belief, Franco has been employed at the Turner job site as steward since February 2002, and over that period of time has earned over $125,000 per year with overtime, accumulated over 2,500 hours of work per year, and

24

has been performing relatively easy and physically less demanding jobs without having to address the uncertainty and anxiety that a general laborer must endure when working on a short-term job. None of the named plaintiffs earned over $125,000 per year in 2002 or thereafter; none of the named plaintiffs accumulated over 2,500 hours in 2002 or thereafter; and all of the named plaintiffs had their shop steward certificate or would have and could have easily renewed or obtained a shop steward certificate in order to received the assignment, but were denied that opportunity as a result of Local 79's nepotistic and cronyistic practices.

90. On October 29, 2002 Colon, Flowers, Willie Lewis, Harrison, and Hairston were on the Out-Of-Work list, respectively numbers 2, 22, 107, 113, 609. The October 29, 2002 list is annexed as Exhibit 2. One of Local 79's cronies at the time, Peter Dinuzzo, was number 238 on the list and had placed his name on the list on September 30, 2002, after all the aforementioned plaintiffs placed their names on the list.

91. In early November 2002, Dinuzzo was assigned as shop steward of a general contractor's job for Manhattan Business Interiors at 1995 Broadway, a position that the aforementioned plaintiffs on the list should have been assigned but were not because they are not members of the nepotistic system.

25

92.   In January 2002 Colon, Harrison, Bell, Mitchell, Flowers, Hairston were on the Out-Of-Work List as numbers 22, 156, 250, 313, 394 and 854, respectively.  Another of Local 79's cronies, Joseph Chiappetti, appeared on the list as of December 28, 2001 as number 454.  The January 2, 2002 list is annexed hereto as Exhibit 3.

93.   Upon information and belief, Chiappetti bypassed the aforementioned plaintiffs and received an assignment in early January 2002 as a shop steward for Sing Zi Construction at 919 Third Avenue.

94.   On November 26, 2002 Flowers, Willie Lewis, Harrison, Henry and Wright were on the Out-Of-Work List respectively as numbers 2, 59, 64, 128 and 336, and on October 24, 2002 another Local 79 crony, Michael Mongelluzzo, appeared on the list as number 345. The November 26, 2002 list is annexed as Exhibit 4.

95.   Several days later, Flowers was assigned a job at Battery Place as a general laborer for Sciame Construction and when he got to the job he discovered that Mongelluzzo was already at the job as a shop steward, thereby jumping over all the aforementioned plaintiffs on the November 26, 2002 list.

96.   Nine days later Flowers was laid off, became unemployed and lost income and benefits whereas Mongelluzzo

26

remained on the Sciame job, which was a long-term new construction project.

97.   In the spring of 2002 Flowers complained to the Business Manager and the President, Frank Noviello, about the lack of work and the nepotism in the union and as a result they sent Flowers to a job for Turner Construction, a company for which Noviello also acts as general laborer foreman.   After several different assignments with Turner, Flowers is sent to a long-term job for Turner Construction in the summer of 2002 at Carnegie Hall and when Flowers reported to work he learned that Nicholas Tarul, the husband of the Business Manager's personal secretary, Lori Tarul, was the shop steward on the job even though Tarul had only recently joined the union and had very little experience in the construction business.

98.   In the Fall of 2001 another of the Local 79 cronies, Carmine Rizzo, received as assignment as shop steward for Bovis Construction for work at Ground Zero.   When that assignment began to slow down, in the summer of 2002, Rizzo was assigned to another long-term job with Turner Construction as shop steward.   Upon information and belief, Rizzo does not put his name on any Out-Of-Work list maintained by the union, and simply moves from job to job as shop steward because of his cronyistic connections with the union.

99.   The Out-of-Work List and the Hiring Hall rules are regularly ignored and bypassed, and the controlling members of Local 79 refer out attractive, long-term and lucrative jobs to family members and friends.  As a result minority members are on the Out of Work List for extended periods of time, and when they are sent out for work off the List the jobs are unattractive and/or short-term jobs.

100.   Local 79's nepotistic and cronyistic referral practices have a disparate and discriminatory impact on minority members.  Local 79's nepotistic and cronyistic referral practices constitute intentional discrimination as part of an established pattern and practice of disparate treatment.

101.   Earlier this year, Daniel Kearney, Local 79's Secretary-Treasurer and Executive Board member since 2000, pleaded guilty to embezzlement of membership funds in United States vs Kearney, 04 Cr 00322 (JES). Upon information and belief, Kearney used union funds to purchase numerous consumer goods for his cronies at the union, and as a result LIUNA is in the process of imposing a trusteeship or supervision over Local 79.  Since Kearney's indictment, several of the members of Local 79's Executive Board, including the President and the Director of the Hiring Hall, have resigned.

28

## FIRST CLAIM FOR RELIEF

102.  Plaintiffs repeat and reallege each of the foregoing allegations as if set forth herein in full.

103.  On September 10, 2003 the Equal Employment Opportunity Commission issued the plaintiffs in this action right-to-sue letters, thereby authorizing the amendment of this complaint to add a claim for relief under Title VII of the Civil Rights Act, as amended.

104.  The discriminatory conduct by Local 79 constitutes a violation of the plaintiffs' and the class's rights under Title VII of the Civil Rights Act of 1964, as amended.

105.  Local 79's nepotistic and cronyistic referral practices have a disparate and discriminatory impact on minority members and as such are unlawful pursuant to 42 U.S.C. §2000e-2(k) because the unlawful conduct has caused the named plaintiffs to earn less money and an accrue smaller benefits than the favored members of Local 79 who, upon information and belief work between 2,300 and 2,600 hours per year, more than twice that of the typical member of the disfavored members and greater than the hours that any of the named plaintiffs accrued at any time relevant to the complaint.

## SECOND CLAIM FOR RELIEF

106.  Plaintiffs repeat and reallege each of the

29

foregoing allegations as if set forth herein in full.

107.  Local 79's nepotistic and cronyistic referral practices constitute intentional discrimination as part of an established pattern and practice of disparate treatment in violation of 42 U.S.C. §1981.

### THIRD CLAIM FOR RELIEF

108.  Plaintiffs repeat and reallege each of the foregoing allegations as if set forth herein in full.

109.  The discriminatory conduct by Local 79 constitutes a violation of the plaintiffs' and the class's rights under Section 296(c) of the New York State Human Rights Law.

### FOURTH CLAIM FOR RELIEF

110. Plaintiffs repeat and reallege each of the foregoing allegations as if set forth herein in full.

111.  The discriminatory conduct by Local 79 constitutes a violation of the plaintiffs' and the class's rights under §8-107(1)(c) & (17) of the New York City Administrative Code.

112.  Pursuant to 8-502(c) of the New York City Administrative Code, plaintiffs have previously delivered to the New York City Law Department and the New York City Commission on Human Rights a copy of the Complaint.

### FIFTH CLAIM FOR RELIEF

113.    Plaintiffs repeat and reallege each of the

foregoing allegations as if set forth herein in full.

114.   The discriminatory conduct by Local 79 constitutes a violation of the plaintiffs' and the class's rights under §43 of the New York State Civil Rights Law.

## PRAYER FOR RELIEF

On behalf of themselves all other persons similarly situated, plaintiffs demand that the Court: (1) enter an order certifying the claim pursuant to Fed. Rule Civ. Pro. 23(b)(2); (2) enter declaratory judgment declaring that Local 79 has violated the civil rights of the plaintiffs and the class; (3) enter a permanent injunction prohibiting Local 79 from engaging in the illegal and discriminatory conduct alleged in the complaint; (4) awarding equitable and monetary relief to the named plaintiffs and the class in the form of back pay, punitive damages, nominal damages, and incidental monetary relief; (5) awarding the plaintiffs and the class reasonable attorney's fees and costs; and (6) granting such other and further relief as the Court deems just and proper.

**JURY DEMAND**

      Plaintiffs demand a jury trial on all issues so
triable.

Dated:  August 2, 2004
        New York, New York

                          LAW OFFICE OF
                          NATHANIEL B. SMITH

                          By: s/NBS___
                            Nathaniel B. Smith (NB 4487)
                          111 Broadway, Suite 1305
                          New York, New York 10006
                          212-227-7062